NACE BROWER *v.* JAMES S. WATSON *et al.*

(*Jackson.* April Term, 1922.)

1. **SHERIFFS AND CONSTABLES.** Sheriff not liable for unauthorized acts of son acting on impulse without authority.

Where a sheriff in the discharge of his duty undertook with the assistance of his deputy to arrest the occupants of a notorious gambling house, firing a shot through the ceiling of the building to intimidate them, and in the confusion following, the sheriff's son, there without invitation and acting on impulse and on his own account, fired into the crowd, his father, as sheriff, was not liable for any injury resulting from the son's act. (*Post, pp.* 632, 633.)

2. **APPEAL AND ERROR.** Bill of exceptions sufficient, if record affirmatively shows it contains all the evidence, although not specific words.

A bill of exceptions is sufficient if the record affirmatively shows that it contains all the evidence and it is not necessary that it should contain the specific words. (*Post, pp.* 633, 634.)

3. **SHERIFFS AND CONSTABLES.** Action on sheriff's official bond payable to Mississippi cannot be maintained in Tennessee by a resident of Mississippi.

An action against a sheriff of a county in Mississippi on his official bond, which was by Hemingway's Code, Miss. section 2802, made payable to the State of Mississippi for a cause of action arising in such State, cannot be maintained in Tennessee by a resident of Mississippi. (*Post, pp.* 634-646.)

Cases cited and approved: Town of Cady v. Bailey, 95 Wis., 373; Huntington v. Attrill, 146 U. S., 657; Spokane & I. E. Ry. Co. v. Whitley, 237 U. S., 495; Indiana v John, 5 Ohio, 217; Boston & Maine Railroad v. Hurd, 108 Fed., 116; Patty v. Williams, 71 Miss., 840.

Brower v. Watson.

Cases cited and distinguished: Pickering v. Fisk, 6 Vt., 102; Carmichael v. Moore, 88 N. C., 30.

Code cited and construed: Sec. 3079 (Hen.).

Constitution cited and construed: Act. 4, sec. 2.

FROM SHELBY.

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court—HON. J. P. YOUNG, Judge.

WILSON & ARMSTRONG, for plaintiff.

FITZHUGH, MURRAH & FITZHUGH and C. H. WILLIAMS, for defendant.

CHAPMAN & JOHNSON, of counsel.

MR. L. D. SMITH, Special Judge, delivered the opinion of the Court.

Nace Brower, by next friend (he being a minor), a citizen of the State of Mississippi, brought this action against James S. Watson, sheriff of Sunflower county, in said State, and the United States Fidelity & Guaranty Company, surety on said sheriff's official bond, to recover damages which he laid at $25,000, basing his right to recover upon certain facts alleged, in substance, as follows: (1) That Watson was elected to the office of sheriff in January, 1919, and as such it was his duty to, and he did,

execute a bond with the defendant United States Fidelity & Guaranty Company as surety in the penalty of $10,000, conditioned for the faithful performance of the duties of his office; (2) that said sheriff breached the conditions of his bond, in that he in person or by his deputies maliciously and wantonly committed an assault upon plaintiff by shooting and wounding him; (3) that the bond was made by defendant sheriff under the provisions of the laws of Mississippi, and whereby it inures to the benefit of any person injured by a breach thereof.

On the trial of the case in the circuit court pleas in abatement to the jurisdiction of the court and motions for a directed verdict were overruled as to the defendant Watson, and sustained as to the surety, the United States Fidelity & Guaranty Company, and there was a verdict and judgment against the defendant Watson for the sum of $5,000.

The case was taken to the court of civil appeals, on appeal by the defendant Watson, and on writ of error by the plaintiff, Brower; the former complaining at the action of the trial court in declining to grant a new trial in his favor, and the latter complaining at the action of the court in dismissing the suit as to the surety, the United States Fidelity & Guaranty Company.

The court of civil appeals reversed the action of the circuit judge as to the defendant Watson, and affirmed his action as to the defendant United States Fidelity & Guaranty Company, and dismissed the plaintiff's suit.

According to the petition for *certiorari*, the action of the court of civil appeals is based upon three grounds, which were properly raised in the court below:

First, that the suit could only be maintained in the name of the State of Mississippi, since the official bond of the sheriff was made payable to the State of Mississippi;

Second, that the action was local or official in its nature, so as to render it cognizable only in the courts of the State of Mississippi; and,

Third, that there was no evidence to support the verdict on the merits of the case.

It is contended by the petitioner that neither ground affords any legal basis for the decision.

With respect to the first ground it is said that under the statutes of Mississippi the bond is given for the use and benefit of any person who may be injured by a breach thereof, and that the State of Mississippi is merely a nominal party, and has no interest whatever in the proceeds of the recovery: that the statute of Mississippi (Hemingway's Code, section 2802), requiring the bond to be executed to the State and suit to recover thereon be brought in the name of the State, is a mere matter of procedure, and since the real right of action is in favor of the person injured by the breach of the bond, the courts of Tennessee will entertain a cause of action in accordance with its own forms of procedure.

With respect to the second ground, it is contended that this is a mere proceeding in an action of tort, the right to recover on the bond being a mere incident thereto, and that therefore the action is not local, but transitory.

With respect to the third ground, it is contended, in the first place, that the transcript does not show that the bill of exceptions contains all of the evidence heard in the trial court, and, in the next place, that there is sufficient

evidence contained in the bill of exceptions to sustain the verdict and judgment of the trial court.

The undisputed evidence establishes the facts of the transaction to be that, in July, 1918, in the village of Blaine, Sunflower county, Miss., there was a notorious negro gambling house, commonly called "Honky Tonk," where employees of the Gayosa Lumber Company and others congregated and engaged in gambling, bootlegging, etc., after being paid off by the company for work, which they generally performed in cutting timber in the woods adjacent to this village.

The plaintiff, Brower, came into this village to get his pay, and, according to his testimony, on the night of July 27th, he went into this "Honky Tonk" for the purpose of rounding up some hands to take back to the woods. Prior to this time the defendant Watson, who was sheriff of that county, had been advised by reputable citizens that this "Honky Tonk" place was being visited and used for gambling and other lawless purposes, and he promised to endeavor to break up this establishment. Soon thereafter the sheriff and his deputy, one Felter, went to this place, arriving there about 11 o'clock. The sheriff went to the door of the building on the south side, while the deputy went to the north side. This building contained several rooms, one in which gambling was engaged in, another had a lunch counter in it, another a dance hall, in which there was a piano, etc. There were partitions between some of the rooms, but no door in the partitions. When the sheriff went to this place there were from seventy-five to two hundred negroes there, most of them in the gambling room. There was considerable confusion and quarreling going on. One negro had threatened another with a gun,

Brower v. Watson.

and the negro proprietor was endeavoring to quiet them. After the sheriff had sent his deputy around to the north side, he entered the gambling room at the door of the south side, and immediately announced that he was the sheriff, and ordered the occupants to hold up their hands. This announcement of his was ignored, and for the purpose of attracting attention he fired one shot from his pistol, directly into the ceiling. This was the only shot fired by him that night, although plaintiff insists there is evidence of others, and it is conclusively shown that this shot did not strike the plaintiff. No recovery could be had in this case based upon anything the sheriff himself did, and, unless his deputy was guilty of some improper conduct, no right of action accrued at all in favor of the plaintiff.

It is conclusively shown by the undisputed evidence that the deputy, Felter, did not fire a single shot, and therefore the action cannot be based upon any misconduct upon the part of the deputy Felter.

The real contention is that the shot which struck the plaintiff was fired by the son of the sheriff. The evidence conclusively shows that he was not a deputy, and was not acting in or under any color of authority whatever. It does appear that the sheriff's son had, at the request of the sheriff, driven him in an automobile from his home, which was away from the county seat, down to Blaine. His son, of course, knew the purpose of his father's visit to Blaine. After they arrived there the automobile was stopped some distance from the "Honky Tonk" place, and this son was to wait there until the return of the sheriff. This son, however, was apprehensive of danger to his

father, and without the knowledge of the father, followed him.

When the sheriff fired his pistol there was a scattering and a mad rush of the occupants, who fled through the doors and windows in every direction, and soon thereafter there were several shots fired, the exact number being differently estimated, the sounds of the shots coming from different directions, both inside and outside of the building. After all this shooting was over and things had quieted down, it was discovered that the plaintiff had been shot.

The son, who was following his father, heard the commotion in the room, and he rushed in, and as he stepped into the gambling room he noticed a negro holding a pistol in his hand, in a threatening manner, and in the direction where his father was, and, believing his father was in danger he fired at the negro, but he missed his mark.

There is no certainty whatever from this evidence that any of the shots fired by the defendant's son struck the plaintiff. He may have been struck by any of the various shots that were fired, and there were too many persons there, who could have just as easily fired the shot that struck plaintiff, to remove the case from the realm of conjecture and uncertainty. One witness describes the person who did some shooting as being a young man, and located the person so as to leave the impression that it might have been the son.

It is contended that there is evidence tending to show that the sheriff himself shot more than one shot. If this be conceded, still there is no evidence that either one of the shots fired by the sheriff struck the plaintiff, but when the evidence is examined closely it does not appear that

Brower v. Watson.

the sheriff shot more than one shot, and that was into the ceiling.

In the brief of counsel for the plaintiff it is said:

"The only defense aside from a purely moral situation that young Watson was waiting with his car in a bad place, etc., might be that young Watson was an unaccepted volunteer. Nobody believed it, and nobody could be expected to believe it, as it was unreasonably told," etc.

A complete answer to this contention is that there was no proof whatever to the contrary. It is established that young Watson was not a deputy sheriff, and had never been, had never accompanied his father on a raid, and he had not been invited on this one. He had simply driven his father to the vicinity where the raid was to be made. He was not invited to go in the raid. He had no authority from his father to join in it. He was both without actual authority—and there is no evidence that he got any color of authority from his father, the sheriff—and without invitation. He simply acted upon a natural impulse, and on his own account. Under these circumstances, his father cannot be held responsible for his conduct.

There is no merit, real or otherwise, in the claim of the plaintiff, unless we can presume that there was other evidence than that contained in the record. The question is made that the record nowhere shows that the bill of exceptions contains all of the evidence. It is not necessary that it should contain the specific words. It is sufficient if it affirmatively appears that the record contains all of the evidence.

Whether the showing is sufficient is a close question, which we shall pretermit, in view of our conclusions on other phases of the case determinative of it.

The other grounds of the decision of the court of civil appeals involve a consideration of the nature of this action. It is the petitioner's contention that the action is one of tort, growing out of the unlawful conduct of the sheriff in the performance of his official duties. It is quite true that an alleged tort furnishes the basis for the breach of the bond, but there is quite a difference in the nature of an action to recover upon the bond of the sheriff, executed for the benefit of the plaintiff, for the breach of its conditions, and an action to recover the damages retulting from the tort itself.

It is quite evident from an examination of the declaration in this case that Watson is not sued for the tort. If that were so, there would be no possibility of a recovery against the surety on the bond, nor against Watson himself, if the wrong had been committed by one of his deputies. It is only by virtue of the fact that the sheriff is responsible for the conduct of his deputies that an action would lie for a wrong committed by the deputy, and of course the surety on the official bond would be neither a proper nor necessary party in such an action. Neither can it be said that the declaration proceeds upon both theories.

The facts alleged as constituting the breach of the official bond would have certainly afforded the plaintiff a cause of action had he chosen to have brought suit. Both grounds of recovery could not have been properly joined in one action. Plaintiff chose to base his action upon the bond.

The declaration alleges that the defendant was sheriff of Sunflower county, Miss., and that as such it was his duty to, and he did, execute a bond conditioned for the faithful performance of his duty, and that the defendant United States Fidelity & Guaranty Company was surety upon

this bond. It alleged that the conditions of the bond have been broken by reason of one of his deputies having made an assault upon, and injury to, the plaintiff. It is alleged that this bond was executed under the provisions of the laws of the State of Mississippi, by reason of which the bond inures to the benefit of any person injured by breach thereof. The amount and the provisions of the bond are set forth in the declaration, and it is alleged that the conduct and action of the sheriff was had in pursuance of and under the color of authority of the office of sheriff.

The facts alleged merely constitute the ground of the breach of the bond relied upon. *Town of Cady* v. *Bailey,* 95 Wis., 373, 70 N. W., 285.

We have therefore a case in which the plaintiff, a resident and citizen of the State of Mississippi, invokes in his behalf the benefits of the laws of Mississippi, and of a bond executed by an officer of the State of Mississippi to indemnify him against loss sustained by virtue of the misconduct of an official breaching the bond. If this were merely an action brought in this State to enforce a right of action accruing in another State, under well-settled principles of law, it could be maintained, for under our federal Constitution (article 4, section 2) every State must extend to the citizens of other States the same rights and remedies which it affords to its own citizens. But it is equally well settled and conceded that it is not strict right, but comity, which enables one to bring a cause of action in one State for the enforcement of a cause of action which arises in another, and therefore there are well-known exceptions, not within the provisions of our Constitution, which prevent jurisdiction attaching, where the cause of action arose in another State, in favor of a citizen of that

State against another citizen of that State. These exceptions grow naturally out of the principle that one State will not interfere with regulations relating to the government of another State. For example, the courts of one State will not entertain jurisdiction to enforce the penal laws of another State, the reason being that every State has the right to regulate its own governmental affairs. This exception not only includes criminal cases, but it includes all cases wherein penalties imposed by the laws of other states are attempted to be enforced. Penalties prescribed by one State to enforce a compliance with its laws will not be enforced by the courts of another State. Penalties provided for by contract between parties and mere liabilities created by statute of another State do not fall within the exception.

It was said by the supreme court of the United States, in *Huntington* v. *Attrill*, 146 U. S., 657, 13 Sup. Ct., 224, 36 L. Ed., 1123, that the question of whether a statute of one State, which in some aspects may be called penal, is a penal law in the international sense, so that it cannot be enforced in the courts of another State, depends upon whether its purpose is to punish for its violation against the public justice of the State or to afford a private remedy to the person injured by the wrongful act.

That test was applied in a case where the question was whether the statute involved was a penal statute or not. We may well conclude, and such we think is the interpretation of the statute involved in the case at bar, that it is not a penal statute within the international sense, since the statute does not permit of a recovery for the full amount of the bond as a penalty, but makes the obligors of the bond bound for any injury that may result to individ-

uals from a breach of the obligation of the bond. But there are other causes of action falling within the exception to the general rule which entitles a citizen of one State to utilize our courts for the enforcement of a right arising under the laws of the other State, which cannot be enforced in the courts of this State; the reason underlying them being practically the same as that which prevents entertaining jurisdiction for the enforcement of penal statutes of another State, as well as reasons of public policy, and that is, that no court will take cognizance of a matter which concerns the internal police regulations of another state.

It is this latter principle which will prevent in this case the courts of this State from entertaining jurisdiction of an action by a citizen of Mississippi against an official in the State of Mississippi upon his official bond, for a cause of action arising in the State of Mississippi.

It has been observed that the bond sued upon in this case is made payable to the State of Mississippi, and the law of Mississippi specifically provides that any action on the bond must be brought in the name of the State of Mississippi. The bond is evidently provided for in order to enable the State to have an opportunity adequate to enforce compliance by an official of the State with his public duties. While it is true under the statutes of Mississippi that a person injured by a breach of the sheriff's official duty can have the benefit of the protection afforded by his official bond, the legislature of that State reserved the right to have such cause of action enforced in its own name, in order that it can see to it that all persons to whom any injuries might result by reason of the failure of the performance of the duties of the sheriff would have full pro-

tection afforded by the bond. Another evident purpose for the requirement of such a bond, just as the requirement for an official to subscribe to an oath, was for the purpose of inducing performance by the public official of his duty. By this provision of the law the State undertakes in a measure to regulate its internal affairs. This bond is not a contract growing out of business transactions between individuals, but is one given by a public officer to guarantee a faithful execution of a public trust, made payable to the State for the public security.

"It is a part of the internal police of the State, of the machinery by which she regulates her internal concerns, and protects her citizens from an undue or improper exercise of the powers vested in her own officers. Such an obligation is local in its nature, and is widely different from those contracts, which, having for their object private and individual interests alone, are enforceable everywhere."

The language just quoted is that of the supreme court of Vermont in *Pickering* v. *Fisk,* 6 Vt., 102. That case was quite similar in its facts to the one now under consideration. That was an action brought in the courts of Vermont in the name of the treasurer of the State of New Hampshire against the sheriff and his sureties on his official bond of a county in New Hampshire for the failure of the said sheriff to faithfully discharge certain duties imposed upon him by law in that as sheriff he received for collection a certain execution and failed to collect and return the execution, as the result of which the plaintiff lost the benefit thereof. The jurisdiction of the court to entertain the suit was challenged by the defendants. The question of whether the statute of New Hampshire was strictly a penal statute did not control the decision of the court in holding that

the courts of Vermont were without jurisdiction to enforce the rights of the plaintiff in that case. The reasons given are so sensible and pertinent, and so in accord with our views of the administration of justice, and so well expressed, that, we adopt them as our own:

"The basis of the argument, however, lies deeper still. It is to be found in the nature, object, and purposes of the bond itself. It is not a contract originating in the ordinary business transactions of men, created for private and individual purposes as evidence of private right. If it were such, it would be transitory as the persons of the contracting parties, and would be enforced in any jurisdiction where the legal obligation of contracts is recognized. It is a general rule, that courts of all civilized nations will enforce contracts executed in foreign States, where the parties are within their jurisdiction; and for this purpose, will have regard to the laws of the place where the contract may be made. The rule, however, has reference to those contracts, arising in the ordinary course of business transactions, which, conferring personal rights, and being entered into without reference to any particular local regulations, are of equal moral and equitable obligation, wherever the parties may be found. No State interferes with the internal police of another; nor will it enforce an obligation, entered into with a view to that police, and intended to have no operation except in connection with it. The bond in question is not a mere personal contract. It is a security, taken in pursuance of the laws of New Hampshire, for the purpose of securing a due and proper administration of their public affairs—given by a public officer, to guarantee a faithful execution of a public trust, executed to another public officer, not for his private benefit, but for

the public security; and to be enforced, from time to time, by their own tribunals, and in the manner pointed out by the laws regulating the action of those tribunals, for the benefit of each and every citizen alike, who may be injured by an official default. It is a part of the internal police of the State—of the machinery by which she regulates her internal concerns, and protects her citizens from an undue or improper exercise of the powers vested in her own officers. Such an obligation is local in its nature, and is widely different from those contracts, which, having for their object private and individual interest alone, are enforceable everywhere.

"It certainly never was contemplated by the legislature of that State, when it provided for this security, nor by the parties to it, when it was executed, that it should be taken abroad, as evidence of a personal contract, to be enforced in other jurisdictions, in any and every manner, which their laws might warrant. If such proceeding were tolerated, it might, and probably would, result in giving to the contract a totally different effect and operation from that contemplated by the law of New Hampshire, and intended by the parties.

"That comity, also, which leads us to adopt the laws of a sisted State as our guide for the purpose of dispensing justice to her citizens, when asked at our hands, would in this instance forbid it. Should this suit be sustained, and a judgment rendered for the plaintiff, that judgment must extinguish the bond and all future remedy upon it. The statute of New Hampshire, providing that a judgment on the bond shall not be conclusive, could have no effect upon a judgment of this court; and if our jurisdiction of the subject, is admitted, our adjudication must be final and con-

clusive.  The effect would be, that the security would be withdrawn from the jurisdiction of the courts of that State, and their citizens would be compelled to resort to the courts of this State for redress in case of any subsequent breach; if indeed there be any law of this State which would enable us to afford it.  The result would involve not only an interference on our part with their internal police, but an interference tending to exclude the proper action of their own tribunals on the subject, and withdrawing altogether from them a matter exclusively within their cognizance.

"The argument may be illustrated by taking the case of a probate bond, executed under our law, and supposing it put in suit in another State.  If jurisdiction is assumed by a foreign court, it must proceed, either according to the course of the common law, or according to some regulation which might exist there, applicable to such cases.  In one case, the security would be extinguished by a single instance of enforcing it, and, in the other, an operation and effect might be given to the security widely different from its original purpose and intent. And even if we admit that the proceeding might be made to conform to the provisions of our statute authorizing a *scire facias* from time to time, in behalf of persons injured by successive breaches, still the objection would exist, in its full force, to suffering the security to be withdrawn from our jurisdiction, and compelling our citizens to resort to a foreign tribunal.  The practical operation of such a proceeding illustrates most forcibly the propriety of the rule, which confines every security of this character within the cognizance of the domestic tribunal.

146 Tenn.—41

"We do not decide, nor ought it to be so understood, that no action can, under any circumstances, be sustained by us upon a bond of this kind, denominated official, executed in another State. There are doubtless many cases where an action on such an instrument would be sustained. For instance, a bond for the liberties of a prison, executed under our law, might very properly be enforced in another state, although executed to the sheriff in his official capacity, and in that sense an official bond; and so *e converso,* a similar bond, executed abroad, would be enforced here. And even the bond in question might be enforced here, under certain circumstances. Supposing the sheriff to have purloined the funds of the State intrusted to his official care, and an action to be brought here, we might well treat the plaintiff as a trustee for the State, and permit a recovery. But in these cases, we merely give effect to the instrument as a contract recognized by the common law, agreeably to the rules and course of proceeding derived from that law. Wherever a bond, although taken in pursuance of a statutory provision, is left, as to its operation and effect, to be governed by common-law rules, there can be no obstacle to enforcing it anywhere, like any other instrument of the kind. What we decide is this: When an official bond is, by the law of the State where it is executed, to have effect only in a particular way, and to be enforced only in a particular mode pointed out by those laws, the enforcing it in that mode, is the exclusive province of the tribunals of that State. In this instance, the person for whose benefit the suit is brought is a stranger to the bond, and, at common law, could sustain no action upon it. The statute of New Hampshire, giving him a remedy, is a mere local regulation affecting the judicial proceedings of that

State. It is not directory to us, nor can we, consistently with established rules, assume the duty of enforcing it."

Under the statutes of Mississippi (Hemingway's Code, section 3079) the official bond sued on here was limited in the amount of its penalty to the sum of $10,000, and when that penalty is exhausted, no other resort can be had to it under the laws of Mississippi. A portion or portions of the penalty might be obtained by one or more suits, and leave only a remnant thereof for a subsequent suitor. The power of the courts of Mississippi to protect its own citizens and to afford them redress under this official bond might be seriously impaired, and the regulation of its own affairs interfered with by a judgment in this State, and this is but an illustration of the fact that the remedy provided by the statutes of Mississippi for action upon official bonds is a regulation by that State of its own internal affairs. The argument of the Vermont court just alluded to is equally applicable to the ground upon which the decision of the court of civil appeals was fixed, to the effect that it could not be maintained by the plaintiff, but would have to be maintained in the name of the State of Mississippi. The State of Mississippi is not a mere nominal party to an action on the bond of one of its officials. It is quite true that the bond is for the protection of individuals injured by the breach thereof, but the very statute which gives the right also prescribes the method in which this particular right shall be enforced; that is to say, any action for the benefit of a person injured by breach of the bond must be brought in the name of the State of Mississippi and this is for the purpose of enabling the State to see to the proper and just protection of all persons who may be the beneficiaries thereof. It is not a question of mere

formality of procedure, governed by *lex fori,* but it is a question of the right itself. The plaintiff has no part of the bond. He was not the obligee in the bond. He had no rights under the bond except such as the statute requires to be enforced in the name of the State of Mississippi.

We must look to the statutes of that State in which the cause of action arose in order to determine what the obligation is, to whom it runs, and the persons by whom and for whose benefit recovery may be had. *Spokane & I. E. Ry. Co.* v. *Whitley,* 237 U. S., 495, 35 Sup. Ct., 655, 59 L. Ed., 1067, L. R. A., 1915 F, 736.

The case of *Indiana* v. *John,* 5 Ohio, 217, while somewhat different in its facts, recognizes the principle which lies at the foundation of jurisdiction in the case at bar. In that case suit was brought in the State of Indiana for the use and benefit of the parties who claimed to have been injured by a breach of duty on the part of public officials. The suit was against the officer and his sureties, and sought to recover against them upon that averment. The laws of Indiana provided for recovery in such cases in a sum treble the amount of damages. This action was held by the Ohio court to be one to recover a penalty, and jurisdiction was denied on the ground that the courts of one State will not permit the enforcement of a penal statute of another State. The difference in that case and the instant one is that the statute involved there was held to be a penal statute. This is true only with respect to the amount which the plaintiff was entitled to recover under the statute. The real principle behind the decision is that one State will not interfere with the enforcement of statutes made to induce performance of duty by officials of another State,

or otherwise interfere with its internal police regulations. That an action of this sort would have that effect is apparent from the statute which reserves to the State itself the right to suit for the use and benefit of those who may be entitled to the benefits arising from a breach of the bond, as well as the other considerations mentioned. It seems to have been universally held, even with respect to rights growing out of breaches of contract or out of torts, that the question as to the person by whom the action is to be brought is governed by the foreign State which creates the right of action. See cases cited under *Boston & Maine Railroad* v. *Hurd,* 108 Fed., 116, 47 C. C. A., 615, 56 L. R. A., 211. For the greater reason it would seem that in an action for the breach of an official bond the action should be brought in the name of the State, although not the party in interest so far as the pecuniary value of the recovery is concerned, the legislature of the State having prescribed, not merely that form of action, but the right of action to be brought in the name of the State for the purpose of safeguarding the rights of the citizens of that state and for promotion of the faithful discharge of official duties. It seems to us there could be no greater reason for declining to enforce the strictly penal statutes of the State than a suit in the name of the beneficiary, when the right to maintain the action when it is brought is in the name of the State, and for the better protection and promotion of the internal affairs of that State.

Certain it is that the plaintiffs here could not maintain this action in the courts of Mississippi. It is so written in the statute, and it has been so held by the supreme court of Mississippi. The case of *Patty* v. *Williams,* 71 Miss., 840, 15 South., 43, is not opposed to this interpreta-

tion of the statute. That was an action on a guardian's bond; the guardianship being created by operation of the law and fixed upon a particular official. The bond upon which suit was brought was not an official bond, but a guardian's bond, and the statute permitting an action for breach of duty as guardian was held not to be within the meaning of the statute, which required an official bond to be sued upon in the name of the state. The view expressed is fortified by that of *Carmichael* v. *Moore,* 88 N. C., 30. It is true that case was not dealing with a right of action accruing in another State upon the bond of an officer of another State. It was there held that the bond sued upon, being made payable to the State, was the property of the State, and the suit must be brought in the name of the State. It was said:

"The bond sued on is the property of the State, and the only authority the plaintiffs have for putting it in suit is that which is specially given in the statute, and which in terms is limited to a suit brought in the name of the State."

In other words, the statute did not merely regulate the form of the action. In the case here the bond was the property of the State, the State was the sole obligee in the bond, and the law creating the right requires that any suit brought thereupon must be brought in the name of the State, and therefore the only party through whom persons having an interest therein might enforce it.

Upon all the grounds stated as being the foundation for the judgment of the court of civil appeals, the judgment of that court will be affirmed.