## SOUTHERN SURETY CO. v. ILLINOIS POWDER MFG. CO.

No. 9441.

Court of Civil Appeals of Texas. Galveston. July 5, 1930.

Rehearing Denied Oct. 2, 1930.

J. T. Suggs, Jr., of Dallas, for appellant.

Campbell, Myer & Foster, of Houston, for appellee.

PLEASANTS, C. J.

This suit was brought by the appellee, Illinois Powder Manufacturing Company,

against A. J. Harty & Co., a partnership, and the individual members of the partnership, as principals, and against the appellant surety company as surety, to recover the purchase price of goods, wares, and merchandise sold and delivered to Harty & Co. by the plaintiff.

Adopting the convenient designation of the parties used in appellant's brief, the firm of Harty & Co., engaged in the general contracting and construction business, will hereinafter be referred to as the contractor, the appellant surety company as the surety, and the appellee powder company as the claimant.

The following summary of the pleadings of the parties is copied from appellant's brief and adopted as sufficient for the elucidation of the questions discussed and decided in this opinion:

"The plaintiff below, by its Second Amended Original Petition, on which it went to trial, after formal allegations of residence, incorporation, permits to do business, etc., alleged briefly, the following facts:

"That in March, 1926, the defendant Contractor entered into a written contract with a Mississippi Drainage District, a municipal subdivision and corporation of the State of Mississippi, for certain excavation work, including clearing and grubbing, to be done in Sunflower and Leflore County Mississippi; and that the defendant Contractor was engaged in that work during the year of 1926, in the State of Mississippi. That during said year the plaintiff sold to the defendant Contractor, for use in said job, certain blasting caps, wire, fuse, and dynamite, of the aggregate price of $1,258.44. Supplementing this allegation, plaintiff attached to its petition an itemized and verified account of the material sold, in the usual form provided by statute for suit on sworn accounts.

"Plaintiff further alleged that to secure the performance of the said contract, the defendant Contractor executed and delivered to the Drainage District a surety bond in the sum of $134,880.00, executed by Southern Surety Company as surety. In this connection, plaintiff alleged that while the said bond obligated the Surety thereon to indemnify the Drainage District only, a law of the State of Mississippi applicable to such bonds, required the additional obligation that the Contractor should make payment to all persons supplying material and labor for said job; and that this bond should be construed by the court as containing the obligations required by such Mississippi law. Plaintiff alleged that both the Contractor and the Surety had refused to pay for the material supplied by the plaintiff; that the Contractor had abandoned the work on or about August 12, 1926; and that plaintiff had done and performed all things required by the Mississippi statute, and was entitled to the enforcement of the terms thereof. Plaintiff then prayed for judgment against the Contractor and the Surety for its debt, with legal interest from September 1, 1926.

"Nowhere in its petition did the plaintiff allege that the material in question was used in the prosecution of the work in question.

"The defendants, A. J. Harty & Company, and the individual members thereof filed no pleadings whatever.

"The defendant Southern Surety Company, appellant herein, filed a plea to the jurisdiction of the court, alleging: that the Mississippi statute especially pleaded by plaintiff was in force at all times mentioned in plaintiff's petition, and that the contract in question was made, and the work thereunder performed in the State of Mississippi; that the bond sued upon was executed under the terms of, and pursuant to said statute of Mississippi; that said statute provides that only one action may be brought pursuant thereto, notice of which shall be published in the county of performance of the work, and further provides for the proration of the penal sum of said bond among claimants; that such statute contemplates an action on such a bond only in a court of competent jurisdiction in the State of Mississippi, and that there shall not be a multiplicity of suits upon such a bond; that such statute provides that the surety on such a bond shall not be liable beyond the penal sum of the bond; that no reason exists why the plaintiff could not prosecute its suit in Mississippi; but that if plaintiff be allowed to prosecute its suit in Texas, the Surety, through no fault of its own, might be deprived of its right to be sued in only one action on its bond, or its right to be held only to the extent of the penalty thereof; or, through no fault of their own, other claimants would be deprived of the protection of such bond. The Surety then prayed that the cause be dismissed without prejudice, and that the court refuse to take jurisdiction thereof.

"The Surety (appellant) then pleaded a general demurrer, a general denial, and a special plea of its suretyship, praying for judgment over against its principals for such amount as it might be held liable to plaintiff.

"Trial was had before the court without a jury, and resulted in a judgment for the plaintiff, overruling appellant's plea to the court's jurisdiction and its general demurrer, and decreeing judgment for plaintiff for the full amount of its debt and interest as prayed for, against this appellant and its principals. Judgment over against the principals in favor of this appellant was also rendered."

Under appropriate assignments and propositions appellant's brief vigorously and ably assails the ruling of the trial court in not sustaining appellant's plea to the jurisdiction, and in assuming jurisdiction of appellee's suit.

■ The pleadings and evidence show that appellee is an Illinois corporation, having a permit to do, business in Texas and also in the state of Mississippi. The articles, for the purchase price of which this suit was brought, were sold by appellee to A. J. Harty & Co. for use in the performance of a contract undertaking of that firm entered into in March, 1926, with a drainage district in the counties of Leflore and Sunflower in the state of Mississippi for clearing, grubbing, and excavation in the construction of a drainage system for the district. This contract binds the contractor to furnish all labor and material required in its performance, and provides for compliance by the contractor in the performance of the work with all federal, state, and local laws, ordinances, and regulations, and further provides that the contractor furnish an indemnity bond to secure the faithful performance of the contract. Such bond, payable to the drainage district, was furnished by the contractor, with appellant, an Iowa corporation having a permit to do business in the states of Texas and Mississippi, as surety. This bond does not contain the express obligation that the contractor would make prompt payment for labor and material used in the performance of the contract, but, since the statute of the state of Mississippi (Hemingway's Code Miss. 1927, § 2617), which was pleaded and relied on by both appellee and appellant, requires such bond to contain that obligation, it must be read into the bond. This statute (Hemingway's Code Miss. 1927, §§ 2620–2622) further provides that only one action shall be brought on the bond, notice of which shall be published in the county or town in which the contract is performed, and in which all parties interested shall intervene; and that, in event the penalty of the bond shall be insufficient to pay all claims adjudged against it, the surety may pay the full amount of the penalty into court for pro rata distribution among the judgment creditors of the contractor, and be discharged from further liability.

Prior to the institution of this suit in August, 1927, the firm of Harty & Co. had dissolved and abandoned its contract and two members of the firm were residents of Texas and within the jurisdiction of the trial court. Notice of the bringing of this suit was published in the state of Mississippi as required by the statute of that state.

Upon this state of the record we agree with appellant that the trial court erred in not sustaining the plea to the jurisdiction of the court. Unlike the usual questions of jurisdiction, which are only dependent upon the legal power or authority of the court over the parties and the intrinsic subject-matter of the suit, the question here presented must be considered in the light of the broad principles of state comity and public policy.

■ The general rule that a defendant in a transitory action based upon a contract may be sued in whatever jurisdiction he may be found, has, among other well-marked limitations, the requirement that, when the contract liability upon which the suit is based is one imposed by a statute which provides a remedy for its enforcement, that remedy is exclusive unless made cumulative by the statute, and a suit brought to enforce the right created by the statute must be brought in the jurisdiction of its creation.

That the contract sued on in this case is not a common-law obligation seems to be settled by the decisions of the courts of this state. Oak Cliff Lumber Co. v. American Indemnity Co. (Tex. Civ. App.) 266 S. W. 429; General Bonding & Casualty Co. v. Waples Lumber Co. (Tex. Civ. App.) 176 S. W. 651; American Indemnity Co. v. Burrows Hardware Co. (Tex. Civ. App.) 191 S. W. 574; ·Murphy v. Huey & Philp Hardware Co. (Tex. Civ. App.) 267 S. W. 338.

We think it clear that appellee's cause of action accrues to it solely by virtue of the statutory law of the state of Mississippi, and the important question presented by this record is whether the courts of this state should assume jurisdiction to enforce a statutory liability created by the statute of another state, when to assume such jurisdiction and attempt the enforcement of the statute will deprive the defendant of substantial rights which can only be fully asserted and secured in the courts of the state which enacted the statute creating the liability, and when the assumption of such jurisdiction by the courts of this state would largely defeat the primary purpose of the state enacting the statute to thereby protect and benefit its own citizens. We think this question should be answered in the negative.

■ Appellee pleaded the statute and relies upon its provisions to establish its cause of action against appellant. When it invokes the statute as the basis of its claim, it must take the statute as a whole, and all of its pertinent provisions must be read into the contract.

■ The appellant, when it executed the bond, had knowledge or was charged with knowledge of the liability imposed upon it by the statute for the payment of the contractor's obligations for the wages of the laborers who worked in the carrying out of the contract, and for the purchase price of material used in the performance of the contract, but it also knew that this assumed liability could not, under the terms of the statute, subject it to the expense and harassment of numerous suits by parties who might labor and furnish material in the performance of the contract, and that it could only be required under the provisions of the statute to answer to one

suit, and in no event could it be required to pay more than the full penalty of the bond. If these substantial rights of appellant can be accorded it by the courts of this state, it can only be done to the detriment and injury of the citizens of the state of Mississippi for whose primary benefit the statute was passed, by forcing them to intervene and litigate their rights far from their homes and in the courts of another state. The jurisdiction of the Texas courts to enforce this Mississippi statute cannot be sustained without violation of the soundest rules of state comity and public policy, and this is especially true when, as disclosed by the record in this case, there is no impediment to' plaintiff's bringing its suit in the courts of the state of Mississippi.

We have a statute in this state (Rev. St. 1925, arts. 5160–5164 similar to the Mississippi statute. The purpose and intent of our statute and its historical development is discussed in a clear and able opinion by Justice German in the case of American Surety Co. v. Foust (Tex. Com. App.) 272 S. W. 445.

The harm that might come to the citizens of this state by the adoption by the courts of the several states of the rule of jurisdiction contended for by appellee, by which our citizens who might labor or furnish material in carrying out a contract for public works secured by a bond like the one sued on in this case could be compelled to assert their rights in the courts of the state of Maine or Washington, or some other state far from our own, is so obvious as to make such rule obnoxious to every sound principle of public policy.

These conclusions are not lacking support in the authorities. It has been generally held by the highest state courts in which the question has been adjudicated that a suit brought under a state statute fixing the liability of stockholders of a corporation to its creditors for the debts of the corporation can only be brought in the state which enacted the statute upon which the suit is based.

In Finney v. Guy, 106 Wis. 256, 82 N. W. 595, 598, 49 L. R. A. 486, which was a suit brought in a Wisconsin court to enforce liability of a stockholder imposed by a statute of the state of Minnesota, the Supreme Court of Wisconsin says:

"The Minnesota statutes (Gen. St. §§ 5905, 5906) provide a remedy for the enforcement of the statutory liability of stockholders to creditors similar in all respects to that indicated by the statutes of this state on the same subject. Rev. St. §§ 3223, 3224. The courts in both states have held that the plain legislative purpose was to furnish, by the statutes referred to, a method for the enforcement of the statutory liability of stockholders, and that it requires one action in equity, in favor of all creditors to be charged, and against the corporation if there are corporate assets to be reached. * * *

"Both courts have said that the remedy, plainly indicated by the legislature, for the enforcement of the liability, is inseparably connected with it and is exclusive. * * *

"It is elementary that while a statutory remedy, not in terms exclusive, for the enforcement of a common-law right, is cumulative, and that a statutory right, in the absence of a remedy to enforce it, may be made available by some one of the ordinary remedies for the redress of wrongs, a statutory remedy, not by its terms cumulative, to enforce a statutory right, is exclusive. 1 Am. & Eng. Enc. Law, p. 184c. The ultimate question under consideration at this point, as appellant's counsel suggests, was definitely passed upon in May v. Black, 77 Wis. 101, 45 N. W. 949, where it was said that a statutory right, if coupled with a remedy to make it effective, that remedy is exclusive and the right is enforceable only within the jurisdiction of its creation. Numerous cases are cited to support that doctrine, among them: Pollard v. Bailey, 20 Wall. 520, 22 L. Ed. 376; Fourth Nat. Bank v. Francklyn, 120 U. S. 747, 30 L. Ed. 825, 7 S. Ct. 757; Rocky Mountain Nat. Bank v. Bliss, 89 N. Y. 338; Christensen v. Eno, 106 N. Y. 97, 60 Am. Rep. 429, 12 N. E. 648; Nimick v. Mingo Iron Works Co., 25 W. Va. 184; Patterson v. Lynde, 112 Ill. 196. For further cases on the subject, see Huntington v. Attrill, 146 U. S. [657], 36 L. Ed. 1123, 13 S. Ct. 224; New Haven Horse Nail Co. v. Linden [Springs] Co., 142 Mass. 349, 7 N. E. 773; Bank of North America v. Rindge, 154 Mass. 203, 13 L. R. A. 56, 27 N. E. 1015 [26 Am. St. Rep. 240]. The subject was fully discussed in Pollard v. Bailey [20 Wall. 520, 22 L. Ed. 376], supra, and the decision there reached has been followed without exception in the federal supreme court."

A large number of other supporting authorities are cited in this opinion, which is very exhaustive and able. It discusses and differentiates authorities which are seemingly in conflict with its conclusions, and we think clearly shows that there is no conflict in the authorities in cases in which the statute creating the right sought to be enforced provides an exclusive remedy for such enforcement, or when the attempted enforcement of the statute by a foreign jurisdiction will subject the citizens of the state of its creation to serious injustice or inconvenience.

The general rule of jurisdiction in cases of this character is thus stated in 7 R. C. L. § 403:

"The liability of stockholders of a foreign corporation cannot be enforced when it is patent from the whole scope and structure of the statutes of the other state on the subject, that they were intended to be enforced only within its jurisdiction. So when a special remedy is given creditors of a corporation against its stockholders, the liability of the latter cannot

318

be enforced in any state except that in which the corporation was organized.

"Courts which carry the practice of interstate comity to the farthest limit agree that, where the obligation of the stockholder is secondary to that of the corporation, and proportional to that of other stockholders, it will not be enforced in other jurisdictions, unless the equities between all stockholders and all creditors can be administered. No action will lie in courts out of the state to enforce the liability of stockholders for corporate debts, where the statutes imposing such liability provide a single method of enforcing it by one suit in the state courts in favor of all creditors, and against the corporation, if it has assets, and all stockholders."

In another section of the work, under the title "Courts," section 103, it is said: "Accordingly, where a statute plainly requires the equities of all stockholders as between themselves to be worked out in a single suit in equity at the home of the corporation, and the contribution of all stockholders accumulated in the action to be treated as one fund, to be administered for the benefit of all creditors in proportion to the respective claims against the corporation as established in such action, the courts of a state other than that in which the corporation is situated have no jurisdiction to enforce a stockholder's liability."

In the case of Brower v. Watson, 146 Tenn. 626, 244 S. W. 362, 366, 26 A. L. R. 991, which was a suit brought in a Tennessee court against the surety on a Mississippi sheriff's bond, the same rule of jurisdiction was applied upon the same principles laid down in the authorities above quoted.

In the case last cited, in speaking of the intention and purpose of the Legislature in requiring the execution of the bond upon which the suit was based, the court quotes the following from an opinion by the Supreme Court of Vermont (Pickering v. Fisk, 6 Vt. 102) in a similar case:

"It certainly never was contemplated by the Legislature of that state, when it provided for this security, nor by the parties to it, when it was executed, that it should be taken abroad as evidence of a personal contract, to be enforced in other jurisdictions, in any and every manner, which their laws might warrant. If such proceeding were tolerated, it might, and probably would, result in giving to the contract a totally different effect and operation from that contemplated by the law of New Hampshire, and intended by the parties.

"That comity, also, which leads us to adopt the laws of a sister state as our guide for the purpose of dispensing justice to her citizens, when asked at our hands, would in this instance forbid it. Should this suit be sustained, and a judgment rendered for the plaintiff, that judgment must extinguish the bond and all future remedy upon it. The statute of New Hampshire, providing that a judgment on the bond shall not be conclusive, could have no effect upon a judgment of this court; and if our jurisdiction of the subject is admitted, our adjudication must be final and complete.

"The effect would be, that the security would be withdrawn from the jurisdiction of the courts of that state, and their citizens would be compelled to resort to the courts of this state for redress in case of any subsequent breach; if indeed there be any law of this state which would enable us to afford it. The result would involve not only an interference on our part with their internal police, but an interference tending to exclude the proper action of their own tribunals on the subject, and withdrawing altogether from them a matter exclusively within their cognizance."

The authority of the cited cases is not lessened or impaired because of the fact that in the instant case the liability sought to be enforced is one imposed by statute upon the surety on a contractor's bond given to secure the performance of a public work, while the liability upon which the suits in the cases cited was based was imposed by statute upon stockholders of a corporation, or the surety upon the official bond of a public officer. The same legal principles must be applied regardless of this difference in the character of the obligation sought to be enforced.

We do not regard the case of American Surety Co. v. Huey & Philp Hardware Co. (Tex. Civ. App.) 191 S. W. 617, cited and relied on by appellees, as in conflict with our conclusions in this case. The bond sued on in that case by its express terms created the obligation upon which the suit was based, and the plaintiff's right was not dependent upon the statute of the state in which the bond was executed. The case was considered and decided by the Dallas Court of Civil Appeals as a common-law cause of action arising on an express contract between the parties. The question of jurisdiction as presented in this case was not raised in that case. The provisions of the Arkansas statute, where the bond was executed, were not the same as those of the Mississippi statute under which this suit was brought, and were only invoked by defendant to sustain a plea in abatement on the ground that it required suits on bonds to be brought in the county in which the contract was performed, and that there was a defect of parties because certain officials of the state of Arkansas were not made defendants. The court correctly decided both of these questions against the defendants. It is a far cry from the questions decided in that opinion to those presented in this case.

Other questions are presented by this record which, if decided in favor of appellant, would require a reversal of the judgment of the trial court. But, having reached the conclusion above stated, that the trial court should have sustained appellant's plea to its jurisdiction, it is unnecessary for us to decide any of the remaining questions presented.

It follows from what we have said that the judgment should be reversed and the cause dismissed, and it has been so ordered.

Reversed and dismissed.